or arguments not to exceed 15 minutes per side. Mr. Alexander Heejoon Park for the petitioner. Good morning. Good morning. May it please the court that the defendant, Mr. Heejoon Park, may it please the court, my name is Alex Park and I represent the petitioner, Mr. Gilberto Garcia-Romo. I would respectfully request four minutes for rebuttal. Very well. In Pereira v. Sessions, the Supreme Court held that a notice to appear that fails to include the time and place of an alien's initial proceeding is not a notice to appear at all, at least in the limited context of the stop time rule. The question for this court is whether or not a subsequent notice of hearing which contains that omitted information can cure or perfect that initial putative notice to appear. Respectfully, we would ask that you answer that question in the negative and hold that a notice of hearing may not trigger the stop time rule because the only thing that may trigger the stop time rule is a compliant notice to appear under 1229A1. In reaching that conclusion, I would just highlight three main points in my brief time this morning. The first one being just the plain text of 1229B subsection D1, which is the stop time rule, mandates that only a notice to appear may trigger the stop time rule. Second, I would highlight the reasoning in Pereira which reinforces our position. And third, I would like to take just a little bit of time to rebut the matter of Mendoza-Hernandez case issued by the Board of Immigration Appeals and explain why we believe this court should follow the Ninth Circuit's lead and not afford that any deference. Turning first to the language of 1229B subsection D1, essentially what it says, just citing the relevant portions, it says any period of continuous physical presence in the United States shall be deemed to end when the alien is served a notice to appear under section 1229A of this title. Now, it's our position that the phrasing a notice to appear is very important because it suggests a singular document, a singular notice, not a series of notices, not a series of documents issued days, months, weeks, years. Why does it exclude something like a two-part notice? Well, because it's our position that a notice suggests only one notice, a singular document. You say a two-part notice, it doesn't suggest only one. You're still using the word a, so I don't get it. Well, at least in 1229A as well, it refers to a notice, and it also refers to, I think, in a later subsection to the notice, and both of those we would suggest says a singular document. You could have the, what's the opposite of singular? The plural, thank you, the plural document. Still using the word the. Well, I guess to that I would point to the rest of the section where it says under 1229. The literal meaning you would grant could go either way. On a singular notice? Respectfully, I would disagree with your honor on that. How can you when ordinary English does this all the time? They say a book, but a book can have two chapters. I guess if I. They say the encyclopedia, and it could have 12 volumes. I guess my thought would be if I give you a notice of my birthday, and I say I have a birthday. You don't really have any notice of the birthday. If I give you a notice of my birthday, it's my birthday is on this date. Right, but you've only put one piece of information in that notice. What if you said I need to give you a notice of my birthday and address? So you need a notice of birthday and address. Why can't that come and one piece of paper has your birth date on it, and another piece of paper has your address on it, and now I have the notice of your birth date and address? Why can't it be on two different pieces of paper? I guess in theory it could be on two different pieces of paper, but it's our position that it must be served at the same time. Why? Because taken to its logical extreme, the alien could be served a series of separate pieces of paper with each individual criteria in 1229A1. What would be wrong with that? Under the wording. Now I understand that you can have policy, you can say it's like Pereira and everything, but if you're just looking at the words in English, I don't get it. Even with a birthday, what if the statute says you shall be notified of your birthday, and that's later defined as day, month, and year, but not hour. So they send it in and they say my birthday is June 26th, and then they go, oops, we didn't include the year. Well, we say the year is 1948. Why isn't that a notice? It is a notice of something, but it wouldn't be a notice to a peer which is specifically defined. Well, it's defined as including all of those elements, and once you get up to all of the elements, you've got the notice. I mean, I'm not saying that's the only reading, but I can't see how that's not an English reading, sort of intention with the English language. I'm having trouble grasping that. I think maybe if I could highlight some of the reasoning of Pereira, because I think that informs my understanding of the plain language. Okay, so you've got to go to sort of context to get that. That's fair, Your Honor. The fact that the first document is not a notice to a peer at all under Pereira is part of the reason why. It's not a piece of a notice or an incomplete notice. It's simply not a notice at all. And because it's not a notice at all, it doesn't, to me at least, make sense that the notice comes into being only when potentially, in theory, at any point in the future you receive some other document notifying you of the hearing, which is issued by a separate body, the immigration court, as to the individuals prosecuting the case. The other thing I would highlight is, at least in Pereira, so I can... I'm sorry, just as a matter of logic, I'm still not sure I understand that. So let's say that we said an essay for this course that I'm teaching, an essay shall include an introduction, a body, and a conclusion. And a student hands in an introduction and a body, but not a conclusion. At that point I might say, well, you haven't written an essay because my essay requires these three parts. And the student says, oh, I'm sorry, I failed to give you the conclusion, and then gives me the conclusion. At that point, why don't I have an essay? So it might not have been an essay at the beginning when I only had the introduction and the body, but once he gives me the conclusion, I feel like I have an essay now. Why not? I can definitely see the logic of what you're saying. I guess what I would respond to is the language in 1229, or pardon me, the language in Pereira in responding to the dissent. When it says, the dissent posited that 1229A1 just describes what makes a notice complete. And the majority said that that wasn't the case. It defined what is a notice to appear. A notice to appear must be, at a minimum, a document containing the time and place of the hearing. And I understand that the alien was served with a subsequent notice of hearing and did get those dates. But because it's a notice to appear, which is a specific document that's referred to in the Code of Federal Regulations, a notice of hearing doesn't appear in the statute at all. If a notice to appear is not merely incomplete, but it is not anything, it's a nothing for the stop-time rule, because it doesn't have the time and place of hearing, then it doesn't make sense that it could be later completed. It's not merely incomplete, it's just a nullity for the stop-time rule. Has your client ever been given what you would define as a notice to appear? Under the stop-time rule, no, Your Honor. So even though he's had a hearing, he showed up at his hearing, he's had a hearing, his stop-time rule has never run. The clock's still ticking. That's correct, Your Honor. Because of the way the statute is written and because of the Supreme Court's ruling in Pereira, that doesn't preclude a subsequent. My understanding is that a subsequent notice to appear can be reissued just as a superseding indictment can be issued, and that wouldn't present any issues. But the problem is that because of the way the stop-time rules apply in this case, and the immigration judge didn't have the benefit of Pereira, but because of that, the immigration judge didn't reach any of the discretionary factors and just stopped analyzing his case at all on the front end. So if the Department wanted a reissued notice to appear, we wouldn't quibble with that. We wouldn't quibble with that, but you would say that the time starts counting from whatever date in 2019 back to 2009. That's correct, Your Honor, and that's what the Ninth Circuit held recently on Lorenzo Lopez as well. What if they put the notice on two pages and put one page in an envelope and put the other page in a different envelope and then put them together in a large envelope and sent it? Would that be a notice? That would be a notice, Your Honor. Why? Because it's a notice. It's not a single document. But it's being sent collectively as one notice. So if they sent them both in the mail, they sent one in the mail and the mail person already picked it up, and they say, oops, we forgot page 2, and they send that in the mail, the late delivery picks it up and it's delivered on the same day. Is that a notice? You would say not. You are receiving notice, but I guess what I would say is that's not a notice. That would be insufficient. Does it have to have the same title? Like it all has to be like one, so you can tell it's one continuous document? Or what if we put notice to appear as separate documents? Notice to appear, here's the nature of the proceedings. Notice to appear, here's the legal authority. Put that all in separate pieces of paper and then mail them in separate envelopes. Well, I guess what I would say to that is as long as it's being sent as a collective unit, a collective package to the alien, it is a written notice. It has to be stapled or all included together. Well, I guess my response to that would be interpreting it that way would allow the government to send disparate papers at different times about your charges are in one envelope, your date of time of hearing is in another envelope, the place where you're going to go is in another envelope. But what's the harm? Why does that matter as long as... I mean, maybe it would matter because the alien would say, well, I never got this one, and therefore I never got all the pieces. But if the alien says, yeah, I got every piece, why does it matter if they've sent it in a whole bunch of different packages? I see my red light is on. You may answer the question. I would say that there may be no harm, but the statute would mandate it be one document. Thank you, Mr. Park. Good morning. Michelle Slack for the Attorney General, William Barr. The board's decision in this case should be affirmed for two reasons. First of all, there is no proper issue before the court today because any issue that was raised before the board has been waived, and the only issue the petitioner raises in this case was never exhausted before the board. The second reason that the board should be affirmed here is because given all the notice required by the statute, required by Pereira, petitioners shouldn't be permitted to evade the consequences and the purpose of the stop-time rule by continuing to accrue time during the pendency of the proceedings. That would completely thwart the purpose that was behind the stop-time rule. Beginning with the exhaustion problem, as I said before, the issue that was before the board was waived, was not raised before this court. But they raised it sua sponte, right? Didn't the board raise the Pereira issue sua sponte? Actually, it doesn't raise the issue sua sponte. It addresses the issue in the matter of the context of continuous physical presence. The issue that was raised before the board had to do with the factual finding that was made by the immigration judge about whether or not he had actually established the 10 years of continuous physical presence. So necessarily, the board has to address, well, when does that time end? The board's not addressing a complete and full explanatory conclusion about whether or not the two-step process is something that would be justified in light of Pereira. In fact, all the board says about it is one sentence, one rather conclusory sentence, the respondent's accrual of continuous physical presence for cancellation purposes was terminated by the service of the notice to appear, which placed him in these proceedings in combination with the subsequent notice of hearing informing him of the date, time, and place of the hearing. With a CF site to Pereira, that's hardly the kind of full explanatory opinion that was addressed in the Kalili case. In the Kalili case, you had the board actually reaching out and finding an alternative basis for affirming the immigration judge. That's not the situation here. The situation here is all that the board did was sort of set the end of the continuous presence for purposes of addressing the issue that the petitioner did raise to the board from the immigration judge's decision. Petitioner also argues to this court, for the first time in his reply brief, that not only did he not raise the issue, that he was foreclosed from raising the issue before the Board of Immigration Appeals. But to correct Petitioner on that front, in the record on page 23, we find the manner in which this issue was addressed in the brief to the Board of Immigration Appeals. To the board, Petitioner's brief says, quote, the notice to appear terminates the accrual period. End quote. No, this issue is currently being considered by the Supreme Court in Pereira, and I would like an opportunity to address it when the Supreme Court addresses that issue. Nothing in that regard. It essentially concedes that the time had stopped. In addition, there was two months after the Pereira decision was decided, nearly two months, I should say, before the board decides the case here. On June 21, the Supreme Court decided Pereira, and then the board does not address this case or decide this case until August 17. That's nearly two months later. There was an opportunity then for the Petitioner to have raised this issue with the Board of Immigration Appeals. Had he done so, we wouldn't find ourselves in a situation like we are today, where all of the case law and all of the issues that more expansively deal with this issue were decided after the briefings complete in this case. We have the Mendoza. But you briefed all the legal questions for us here, right? But the cases where the board actually addresses the precise issue, because the board doesn't have a full explanatory opinion in this case. It's Mendoza-Hernandez where that takes place. Is it your view that we can't, we as the Court of Appeals, can't take account of the board's intervening authoritative published opinion in construing, like for example, if we were inclined to give Chevron deference, you say there's nothing for us to defer to? No, of course, Your Honor, that's not what I'm saying, and I apologize if I suggested that. What I'm saying is that the ordinary course of the way an issue is supposed to be handled  And we didn't have this issue fully briefed and decided by the Board of Immigration Appeals until after briefing was complete in this case. What extent is the exhaustion before the BIA of issues, as opposed to whether you actually take it to the BIA, a matter of jurisdiction in this review, in this Article III court? Well, it is actually a jurisdictional question as supplied by the statute. It's a jurisdictional question that exhaustion is required for purposes of... Exhaustion can mean exhaustion, you have to go to the BIA, or exhaustion could mean any issue cannot be decided. The Supreme Court's advised us not to make drive-by jurisdictional determinations, and I'm wondering whether there's support for the idea that this court lacks... Assuming that the proper appeals have been gone through and we haven't skipped any steps, they went to the BIA, right, and the BIA made a decision, what is it that says that there's no jurisdiction in the jurisdictional sense, right? Normally you have to have something in the statute that says we can't address something, we lack jurisdiction to address something. Are there cases that say that it's jurisdictional in that sense? Are they post-ARBAW cases or pre-ARBAW cases when the Supreme Court said we shouldn't do drive-by jurisdictional determinations? There is an 11th Circuit decision, and I don't have the case name. No Sixth Circuit case. I would suspect that in deciding the Kalili case, where the Sixth Circuit determined that you could have the board actually waive the exhaustion requirement, that that's a suggestion that the Sixth Circuit sees that as something potentially waivable. If it was potentially waivable, we wouldn't be acting illegally if we ruled in your favor and didn't reach the exhaustion issue. I'm sorry, I'm not sure... If this Court were, and I'm not saying that we are, but if we were inclined to agree with you on the merits of this issue, and so you had viable arguments at the jurisdictional stage and at the merits stage, I'm wondering whether it would be illegal, if you were, for us to affirm on the grounds that you're right on the merits rather than on the grounds that it wasn't exhausted. If it's jurisdictional, in the sense that we don't have the power to decide it, we shouldn't be deciding it one way or the other. But if it's not jurisdictional in that sense, it's rather just a rule that we can rely on to uphold the substance of a decision, because the body below never had a chance to examine it. So in a sense, it was waived. If that's all it is, then would we be legally permitted? That's my question. To rule in your favor without addressing the exhaustion issue, or by saying that the purposes of the exhaustion issue are met here? It certainly seems like the purposes are met. Well... And what's your answer? I would maintain that it's jurisdictional, but... We wouldn't be allowed to do that. But acknowledge that the Khalili case seems to suggest the opposite. Thank you. Then moving to the substantive issue, this whole question about can it be two steps, can it be one step, can it be multiple envelopes included in the same envelope, can it be multiple envelopes received the same day, this is clearly not covered by the plain language of the statute. This stretches beyond belief, the use of the singular article A that precedes notice to appear. In fact, you don't even have to leave 1229A-1 to see evidence that A doesn't necessarily mean a single notice, because if you look at 1229A, it speaks of written notice, and then it lists the written notice that must be received. It doesn't say A in that regard. Also, in contrast, in section 1229A, subsection 2, you find where it specifies when you're making a change to the date and place, A written notice. So that contrast suggests that the A that is in 1229A-2 means something more than the lack of it in 1229A-1. So it could be several different notices. In this case, it was two notices. Whether or not several different notices gets to a point where it might confuse a person so that they didn't really have proper notice, that's for another case. That's not the case before us. Also, petitioner's reliance on Pereira also overstretches the limits of Pereira. Several times in Pereira, the Supreme Court says it's a limited holding. What the Supreme Court is deciding in Pereira is not when does time stop, it's what makes time stop. And it decided that, at minimum, what makes time stop is notice of the date and place of the hearing. In fact, in footnote 5, the Supreme Court says we leave for another day. Whether or not absence of any of the other required notices in 1229 would amount to a failure to stop time. It's just deciding whether or not having notice of the date and place is sufficient for purposes of stopping time. Petitioner received that in the notice of hearing. In fact, appeared for the hearing with counsel and went through all of the proceedings, and not until it comes before this court does petitioner cry foul. Petitioner asked this court to rely on the Ninth Circuit's recent decision in Lopez. But that decision is wrongly decided for a number of reasons. First of all, as I was pointing out, it stretches Pereira beyond its limited holding. In fact, as Judge Callahan, in dissent in the Lopez case, points out, this wasn't even an issue in Pereira. In Pereira, there's no question that Mr. Pereira had met the 10 years of physical presence because he wasn't served with a proper notice of hearing until years after the notice to appear in that case. It reads too much into the use of the singular A. I want to point out, elsewhere in the U.S. Code, at 1 U.S.C. Section 1, the Dictionary Act specifies that unless the context indicates otherwise, words importing the singular include and apply the several persons, parties, or things, because in the nature of the English language, it is not unusual to say A and mean something that also could be plural. Also, the Lopez decision refuses to grant any deference whatsoever to the board's decision in Mendoza-Hernandez. It says that it can't give it Chevron deference because all it's doing is interpreting Pereira. And granted, the board doesn't have any special authority in being able to interpret Supreme Court cases, but it had to necessarily spend time addressing carefully what the Pereira court held and what it didn't hold before it moves on to look at what the statute says. And it does look at what the statute says to acknowledge that, hey, it could go either way. We could say that the use of the A before notices appear is of significance, but we find that it would more fulfill the congressional intent if we allow it to be multiple notices, at least a two-step process, as was the case in this situation. The Lopez Court also refuses to grant any curative abilities. You have to start again from scratch. You can't fix the missing part of the notice that's required. And that's contrary to the Supreme Court's decisions in Becker v. Montgomery and Edelman v. Lynchburg College. Can I ask a question? Yes. This vote in the precedent-setting decision by the BIA was 9-6 or something like that? Yes, Your Honor. So if we were to uphold your position relying on Chevron, would that mean that some future differently constituted BIA could change its mind and interpret it differently? That's an interesting question, whether or not, Your Honor, whether or not an en banc board decision differently constituted, I suppose it could overturn itself. The Attorney General could also reverse the decision. Logically, they could, right? At least that would be consistent with our decision. It may not. You could say that while we relied on Chevron, some future court might say that the majority was right for the different reason, that it was clearly the only answer. But to the extent we would rely on Chevron, it would be subject to overruling in the future by the BIA. Yes, and then the court would have to readdress it here under Brandax. Right. Thank you, Ms. Lange. Thank you. Briefly, Your Honors, I want to just very, very succinctly touch on the waiver issue. We believe that because the BIA resolved this issue, even in one sentence, this is squarely before the court and you can answer the question before you. As to the questions previously about a notice to appear and the proper grammatical interpretation of that, I guess I would simply rely on the analysis in the Lorenzo Lopez case. I believe it's slip of the pen on page 13 and 14. And I would also point to, again, the language in the Pereira majority where they said that, where they were responding to the dissent's theory that a notice to appear is merely incomplete. They said that to omit this information would deprive the notice to appear of its essential character. I guess to that I would say that, again, it's referring to it as a, as I view it, a singular. They were rejecting a different kind of argument in Pereira itself. The argument was that a car with only three wheels is a car. And it was going back, is a three-wheeled item a car or not? That's true. Here, there's clearly four wheels. Well, there's four wheels on four different cars. I mean, that's sort of a shorthand way of saying it was a different argument that they were dealing with when they went through that linguistic turn that they went through. That's true, Your Honor. I think there's still some applicability here. All right. Fair enough. Does a document to be a notice to appear, does it have to be labeled notice to appear? I would, on that point, I would say that the statute would be ambiguous. As to the specific label in the top where it says notice to appear, I do not believe the statute speaks to that specifically. So on that point, I don't believe it would necessarily have to be labeled a notice to appear. I do believe that the language of the statute would mandate that it would require all of the subsections in 1229A1, which although this room and just to respond to opposing counsel's argument just a moment ago about the fact that they were only speaking in Pereira to the lack of the time and place and not to the rest of it, we're positing here that a notice to appear would require all of that material because that is what the statute. If we read Pereira to only require the time and place, I think what I'm hearing is that that second document, which was not labeled notice to appear, but it seemed would satisfy all those requirements, wouldn't it? If you held that it could be, that a notice to appear could constitute multiple disparate documents, that would be true. We are urging you to rule the reverse and all of it. It needs to be a singular notice, which as denied. That would be a singular notice, the second document. It would only have the time and date, but if you read Pereira to say you only have to have time and date, then it would be a notice, wouldn't it? And to that, Judge Bush, I'm sorry, I misunderstood. Pereira only held as to the omission of the time and place, so it only spoke to time and place. It did not affirmatively rule on the remainder of the statute, but the statutory language is clear in that a notice to appear must include the items listed in 29A1. Otherwise, the department could also omit charging information and serve it much later. A notice to appear, as defined by the statute, in a section which the Supreme Court held as definitional, must have all of those subsections. And with that, we would ask that you grant our petition for review and reverse divorce decision. Thank you. Thank you. The clerk may call the next case.